BRYAN, Judge,
dissenting.
I respectfully dissent. In my opinion, the term life-insurance policy constituted a marital asset, and the temporary restraining order (“the TRO”) entered in the divorce action involving Aletha Brown Thomas (“the wife”) and John T. Thomas (“the husband”) prohibited the husband from changing the beneficiary of the term life-insurance policy from the wife to Brian Thomas (“the brother”). Therefore, I would reverse the trial court’s judgment, which holds that the term life-insurance policy is not a marital asset.
No Alabama case has specifically addressed the issue whether a term life-insurance policy constitutes a marital asset. To support its conclusion that a term life-insurance policy does not constitute a marital asset, the main opinion relies on cases decided in other jurisdictions, which, obviously, do not constitute binding precedent in Alabama. Although this court can follow cases decided in other jurisdictions if they are not contrary to precedent of the Alabama Supreme Court, I do not find the cases relied upon by the main opinion to be persuasive.
In my opinion, the contingent right to receive the proceeds of a term life-insurance policy is analogous to the contingent right to receive payment of unvested military-nondisability-retirement benefits, which has been held to constitute a marital asset subject to division in a divorce action in Alabama. See Jackson v. Jackson, 656 So.2d 875, 877-78 (Ala.Civ.App.1995) (plurality decision).
In Jackson v. Jackson, a plurality of this court held that the contingent right to receive payment of unvested military-non-disability-retirement benefits is a marital asset subject to division in a divorce action even though the right to receive those benefits is subject to forfeiture and, therefore, might never occur. In pertinent part, this court stated:
“We believe the better view ... is that military nondisability retirement pay, whether or not vested, constitutes a marital asset subject to division upon the dissolution of the marriage. See, e.g., In re Marriage of Harrison, 13 Kan.App.2d 313, 769 P.2d 678 (1989); Cearley v. Cearley, 544 S.W.2d 661 (Tex.1976); Poe v. Poe, 711 S.W.2d 849 (Ky.App.1986); LeClert v. LeClert, 80 N.M. 235, 453 P.2d 755 (S.Ct.N.M.1969); Miser v. Miser, 475 S.W.2d 597 (Tex.Civ.App.1971); Mora v. Mora, 429 S.W.2d 660 (Tex.Civ.App.1968); and In re Marriage of Brown, 15 Cal.3d 838, 544 P.2d 561, 126 Cal.Rptr. 633 (1976).
“We believe that a benefit right, whether or not it is vested, constitutes an asset that should be shared and, therefore is subject to division upon divorce. The Court of Civil Appeals of Texas held in Mora, supra, that retirement benefits were not gratuities, but earned property rights. There, the husband had not retired from military service, but had completed over 25 years of service with over 14 of those years being served during the marriage. The court held that the husband obtained a property right, even though the vested benefits were not payable at the time of the divorce and might never be received if the husband was dishonorably discharged or died before his actual retire *355 ment. The court pointed out that the possibility of forfeiture did not reduce the benefits to a mere expectancy, but instead made them subject to division as property.
“Further, in LeClert, supra, the Supreme Court of New Mexico approved the award of an interest in military retirement benefits of the husband as community property. There, as here, the retirement payments were contingent on the husband’s completion of service, and his right to them would not vest until after the termination of the marriage. Likewise, in Miser, supra, the Texas Court of Civil Appeals upheld a division of retirement pay where the husband had served approximately 18 and one-half years in the military at the time of the divorce. The court held that if the husband served at least 20 years, the retirement benefit that accumulated during the marriage would be community property.
“We hold that one’s right to retirement benefits is a contractual right, subject to a contingency, and is a form of property. A contrary holding would produce inequitable results.”
656 So.2d at 877 (emphasis added); see also Mosley v. Mosley, 747 So.2d 894, 901 (Ala.Civ.App.1999) (recognizing that lawsuit claims and counterclaims are assets and liabilities, respectively, to be divided in a divorce despite their contingent nature).
Moreover, I agree with the conclusion of the California District Court of Appeal in In re Marriage of Gonzalez, 168 Cal.App.3d 1021, 214 Cal.Rptr. 634 (1985), that, even though a term life-insurance policy has no cash surrender value, it has economic value while the insured is alive because it provides insurance coverage during its term that might otherwise be more expensive or unavailable altogether due to the insured’s advancing age or declining health.[3] Accordingly, I would hold that the right to receive the proceeds of a term life-insurance policy is an asset within the meaning of the TRO despite its contingent nature. Moreover, because the evidence is undisputed that the premiums for the term life-insurance policy were paid with marital funds, I would hold that it was a marital asset subject to division in the divorce action and thus was subject to the TRO.
Furthermore, I do not agree with the position expressed in the other special writing that the husband’s changing the beneficiary of the term life-insurance policy did not constitute “removing” or “disposing” of the term life-insurance policy and that it, therefore, did not violate the TRO. By changing the beneficiary of the term life-insurance policy from the wife to the brother, the husband “disposed” of the wife’s contingent right to receive the proceeds of the term life-insurance policy. *356 Therefore, in my opinion, he violated the TRO when he changed the beneficiary of the term life-insurance policy from the wife to the brother.

. In fashioning divorce judgments, trial courts often include provisions requiring a spouse to insure his or her life for the benefit of the other spouse or the minor children born of the marriage. Thus, a term life-insurance policy that is in existence when the divorce action is initiated may also have value, despite its contingent nature, because it facilitates the fulfillment of such a provision. Moreover, the utility of existing term life-insurance policies in fulfilling such provisions further justifies the conclusion that the term "marital asset” encompasses existing term life-insurance policies when it appears in a temporary restraining order entered to maintain the status quo in divorce actions pending the entry of a final divorce judgment.
In addition, provisions in term life-insurance policies providing that they can be converted to whole life-insurance policies can also confer value on a term life-insurance policy despite its contingent nature, although the page containing the convertibility provision of the policy at issue in the action now before us is not in the record.